**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ELLIOT CLAYBROOK

      *Plaintiff,*

*v.*

COMMISSIONER OF SOCIAL
SECURITY,

      *Defendant.*

_____/

CASE NO. 19-13682

HON. SEAN F. COX
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## <u>MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON CROSS MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 13, 17)</u>

## I.   <u>RECOMMENDATION</u>

Plaintiff Elliot Claybrook challenges Defendant Commissioner of Social Security's final decision denying his claim for Title II Disability Insurance Benefits ("DIB"). The case was referred to me for review. (ECF No. 3); *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3). For the reasons below, I conclude that substantial evidence supports the Commissioner's decision. Accordingly, I recommend **DENYING** Plaintiff's Motion for Summary Judgment, (ECF No. 13), **GRANTING** the Commissioner's Motion, (ECF No. 17), and **AFFIRMING** the Commissioner's final decision.

## II.   <u>REPORT</u>

### A.   **Introduction and Procedural History**

Plaintiff's application for DIB was filed on March 28, 2016. (ECF No. 11-5, PageID.219–20.) For the purposes of DIB, he initially alleged he became disabled on

1

August 20, 2015. (*Id.* at PageID.219.) The Commissioner denied the claim. (ECF No. 11-4, PageID.135–51.) Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which occurred on May 7, 2018. (ECF No. 11-2, PageID.76–110.) The ALJ issued a decision on October 29, 2018, finding that Plaintiff was not disabled. (*Id.* at PageID.55–75.) The Appeals Council denied review on October 16, 2019. (*Id.* at PageID.34–36.) Plaintiff sought judicial review on December 14, 2019. (ECF No. 1, PageID.1–2.) The parties have filed cross-motions for summary judgment and briefing is complete. (ECF Nos. 13, 17.)

**B.    Standard of Review**

The Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). The district court's review is restricted solely to determining whether the "Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x. 502, 506 (6th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). "[T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

The Court must examine the administrative record as a whole, and may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). The Court

will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Id*. at 286. (internal citations omitted).

### C.    Framework for Disability Determinations

Disability benefits are available only to those with a "disability." *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the inability

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.

42 U.S.C. § 1382c(a)(3)(A). The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his or] her impairments and the fact that [he or] she is precluded from performing [his or] her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). The claimant must provide evidence establishing the residual functional capacity, which "is the most [the claimant] can still do despite [his or] her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

The burden transfers to the Commissioner if the analysis reaches the fifth step without a finding that the claimant is not disabled. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [his or] her RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. (ECF No. 11-2, PageID.70.) At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2020. (*Id.* at PageID.60.) Plaintiff had not engaged in substantial gainful activity from the alleged onset date of August 20, 2015.

(*Id.*) At step two, the ALJ concluded that Plaintiff's severe impairments were degenerative disc disease, obstructive sleep apnea, hypertension, and residuals of colon resection. (*Id.* at PageID.60–61.) These impairments did not meet or medically equal a listed impairment at step three. (*Id.* at PageID.60–61.) Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) except that the work must afford the opportunity to alternate from sitting to standing, and from standing to sitting, for up to 5 minutes approximately every 30 minutes, provided that [Plaintiff] is not off task more than 10% of the work period. [Plaintiff] cannot climb ladders, ropes, or scaffolds; can occasionally climb stairs, balance, stoop, kneel, crouch, and crawl; and can frequently handle, finger, feel, and reach. [Plaintiff] cannot work around hazards such as unprotected elevations or dangerous moving machinery, and needs to avoid exposure to vibration. [Plaintiff] cannot perform work that requires operating foot or leg controls, or driving as a work duty.

(*Id.* at PageID.61.) At step four, the ALJ found Plaintiff was unable to perform any past relevant work. (*Id.* at PageID.68.) Finally, at step five, the ALJ determined that Plaintiff could perform a significant number of jobs in the national economy. (*Id.* at PageID.69.) This included office worker, cashier II, and price marker. (*Id.*) Accordingly, Plaintiff was found to be not disabled. (*Id.* at PageID.70.)

### E.   Administrative Record

#### 1.   Overview of Medical Evidence

##### a.   Dr. Adams

Plaintiff had several appointments with Dr. Adams. (ECF No. 11-7, PageID.435–64, 533–80; ECF No. 11-9, PageID.874–1019.) In January 2015, Plaintiff reported that he was involved in a motor vehicle accident in 2004, and he had since experienced spasms,

throbbing sensation, and sharp and shooting pain. (ECF No. 11-7, PageID.435.) Plaintiff further reported chronic low-back pain that intensified over time, and the pain radiates across his low back and down to his ankles. (*Id.*) He said the pain is 8–10/10, and the pain interferes with general activity, walking, work, relationships, sleep, enjoyment of life, and concentration. (*Id.*) Medication helped Plaintiff with his condition. (*Id.*) Dr. Adams observed Plaintiff was well-developed, alert and oriented. (*Id.*) Plaintiff had a decrease in lumbar lordosis and no gross evidence of scoliosis. (*Id.*) Plaintiff had tenderness of the paraspinal musculature on palpation. (*Id.* at PageID.436.) There was tenderness of the bilateral iliac crest and bilateral piriformis muscles. (*Id.*) Plaintiff had functional range of motion in lower extremities, and he had full active flexion of the lumbar spine, but limited extension, rotation, and side bending. (*Id.*) His muscle testing strength was rated 5/5 bilaterally. (*Id.*) Muscle stretch reflexes rated 2/4 at the patella and Achilles tendons bilaterally. (*Id.*) Plaintiff's sensation was intact to light touch at the lower extremities. (*Id.*) He had a normal gait. (*Id.*) Plaintiff's straight-leg raise tests were negative in the seated and supine positions. (*Id.*) Dr. Adams assessment of Plaintiff included low back pain, lumbosacral spondylosis without myelopathy, sacroiliitis, piriformis syndrome, chronic pain syndrome. (*Id.*) Plaintiff will be evaluated for physical therapy and lumbar facet injections. (*Id.* at PageID.437.)

Plaintiff's appointments with Dr. Adams continued. Starting in March 2015, Plaintiff continued to report low-back pain that radiates to the lower extremities. (*Id.* at PageID.438, 440, 442, 562; ECF No. 11-8, PageID.658; ECF No. 11-9, PageID.888, 895, 902, 909, 916, 923, 930, 937, 944, 951, 958, 965, 972, 979, 985.) Plaintiff's maximum pain

rate at this time was 9/10, but it was 5/10 with prescribed medication of Mobic and muscle relaxers. (ECF No. 11-7, PageID.438. *See also id.* at PageID.440, 442, 450, 452, 455, 458, 559, 562, 567, 571; ECF No. 11-8, PageID.658; ECF No. 11-9, PageID.874, 881, 888, 895, 902, 909, 916, 923, 930, 937, 944, 951, 958, 965, 972, 979, 985 for moderate-to-severe pain ratings.) In November 2015, Plaintiff reported falling off a roof in the prior August, and he experienced back and head trauma with decreased memory of the incident. (ECF No. 11-7, PageID.442.) In May 2016, Plaintiff reported a recent diagnosis of colon cancer, and a partial colectomy procedure was done with Dr. Mattingly at McLaren Hospital. (*Id.* at PageID.458.) He reported increased abdominal pain, post-surgery, and the pain decreased with medication. (*Id.* at PageID.559.)

During these appointments, Plaintiff was alert and oriented. (ECF No. 11-7, PageID.438, 440, 448, 452, 455, 458, 559, 563, 568, 573; ECF No. 11-9, PageID.875, 882, 889, 896, 903, 910, 917, 924, 931, 938, 945, 952, 959, 966, 973, 980.) There was tenderness to deep palpation along the thoracolumbar paraspinals, particularly on right. (ECF No. 11-7, PageID.442.) Plaintiff had mild tenderness of the bilateral lumbar spine and sacroiliac joint (ECF No. 11-9, PageID.890, 897, 904, 911, 918, 925, 932, 939, 946, 953, 960, 967, 974.) Plaintiff had moderate bilateral tenderness of the lumbar spine and mild tenderness of the sacroiliac joint. (*Id.* at PageID.981, 987.) There was an instance of minimal bilateral tenderness of cervical spine. (*Id.*) Plaintiff had no tenderness on bilateral cervical spine. (ECF No. 11-7, PageID.568, 573; ECF No. 11-9, PageID.876, 883, 890, 897, 904, 911, 918, 925, 932, 939, 946, 953, 960, 967, 973.) And he had no tenderness of the bilateral

lumbar spine and sacroiliac joint. (ECF No. 11-7, PageID.563, 568, 573; ECF No. 11-9, PageID.876, 883.)

Plaintiff's lumbar spine range of motion and flexion were normal and/or extension/rotation were abnormal. (ECF No. 11-7, PageID.563, 568, 573; ECF No. 11-9, PageID.876, 883, 890, 897, 904, 911, 918, 925, 932, 939, 946, 953, 960, 967, 974, 981, 987.) But his flexion had a mild decrease. (ECF No. 11-9, PageID.890, 897, 904, 911, 918, 925, 932, 939, 946, 953, 960, 967, 974, 981, 987.)

Plaintiff had a normal gait (ECF No. 11-7, PageID.438, 564, 569, 574; ECF No. 11-9, PageID.884) or tandem gait. (ECF No. 11-7, PageID.442, 446, 455, 458, 559; ECF No. 11-9, PageID.918, 926, 932, 939, 946, 953, 960, 968.) He had mild right antalgia (ECF No. 11-7, PageID.440) and mild thoracic kyphotic posture. (*Id.* at PageID.442, 446.)

His muscle testing rated at 5/5 (ECF No. 11-7, PageID.438, 440, 442, 446, 448, 452, 455, 458, 559, 564, 569, 574; ECF No. 11-9, PageID.876, 883, 890, 897, 904, 911, 918, 925, 932, 939, 946, 953, 960, 967, 974, 981, 987.) His muscle testing right hip flexion was 4+/5, all others were 5/5. (ECF No. 11-8, PageID.660.) He had weakness in right hip flexion and abduction. (ECF No. 11-7, PageID.442, 452, 455, 458, 559; PageID.11-9, PageID.890, 897, 904, 911, 918, 925, 932, 939, 946, 953, 960, 967, 974, 981, 987.)

His muscle stretch reflexes were 2/4 at the patella and Achilles tendons bilaterally, (ECF No. 11-7, PageID.438, 440, 442, 446, 448, 455, 458, 559, 564, 569, 574; ECF No. 11-9, PageID.876, 883), but at times his bilateral Achilles rated 1+/4. (ECF No. 11-7, PageID.564, 569, 574; ECF No. 11-9, PageID.876, 883, 890, 897, 904, 911, 918, 925, 932, 939, 946, 953, 960, 967, 974, 981, 987.) His patella tendons rated 2/4 on right, or 1+/4 on

left. (ECF No. 11-9, PageID.890, 897, 905, 911, 918, 925, 932, 939, 946, 953, 960, 967, 974, 981, 987.)

His straight-leg raise tests were negative in the seated and supine positions (ECF No. 11-7, PageID.438, 564, 569, 574; ECF No. 11-9, PageID.877, 884.) One straight-leg raise test was identified only as negative without distinction. (ECF No. 11-7, PageID.442, 446, 452, 455, 458, 559; ECF No. 11-8, PageID.660.) And he had negative straight-leg raise tests in the seated, but positive on left in the supine position. (ECF No. 11-9, PageID.891, 898, 905, 912, 919, 926, 933, 940, 947, 954, 961, 968, 974, 981, 987.) Another straight-leg raise test caused pain on left and was negative on right. (ECF No. 11-7, PageID.440.) Plaintiff's sensation was intact to light touch in the bilateral lower extremities. (ECF No. 11-7, PageID.564, 569, 574; ECF No. 11-9, PageID.876, 883.)

Dr. Adams' plan for Plaintiff included no restrictions on work or activity. (ECF No. 11-7, PageID.437, 539, 565, 570, 575; ECF No. 11-9, PageID.878, 885, 892, 899, 906, 913, 920, 927, 934, 941, 948, 955, 962, 969, 976, 983, 989.)

### b.    Dr. Walker

Dr. Walker completed a medical source statement form in April 2016. (ECF No. 11-8, PageID.703–06.) Dr. Walker stated he has been in contact with Plaintiff since 2004 for about two to five times per year. (*Id.* at PageID.703.) Plaintiff has a history of diagnoses of malignant neoplasm of the sigmoid colon, low back pain, neck pain, radiculopathy, and degenerative disc disease. (*Id.*) His pain was precipitated by walking, standing, sitting, stooping, and bending. (*Id.*) Clinical findings and objective signs of Plaintiff's condition are bilateral low-back pain with bilateral lower limb radiculopathy to the bilateral ankles.

(*Id.*) The side-effects of Plaintiff's medications included dizziness, lethargy, fatigue, constipation, gassiness, headache, and rash. (*Id.*)  Dr. Walker indicated that Plaintiff's conditions have lasted since August 2015. (*Id.*) Further, Dr. Walker indicated that Plaintiff's pain was severe enough to constantly interfere with Plaintiff's attention and concentration, and Plaintiff's stress was severe enough to frequently interfere with his attention and concentration. (*Id.*)

Dr. Walker identified that Plaintiff cannot walk one city block without rest or severe pain, he cannot climb steps without a handrail at a reasonable pace, he can occasionally have problems with balance while walking, and he has problems stooping, crouching, and bending. (*Id.* at PageID.704.) Further, Plaintiff needs to lie down for two to three hours per day, including during a workday, because of pain. (*Id.*) Plaintiff can sit, stand, or walk for one hour, including during a workday, before needing to stop. (*Id.* at PageID.704–05.) Plaintiff will need to take three to four breaks during a workday, of about 15 minutes each time. (*Id.* at PageID.705.) Plaintiff must use a cane. (*Id.*) Plaintiff can lift and carry up to five pounds constantly, occasionally up to 15 pounds, and never more than 20 pounds. (*Id.*) Plaintiff has limitations on his ability to reach, handle, and finger: he can use his right or left hands 50% of the time; he can use his right fingers 60% of the time and left fingers 40%; and right arm 100% of the time and left arm 0% of the time. (*Id.*) Plaintiff cannot use push/pull controls via his arms or legs. (*Id.*) Plaintiff can climb stairs, but he cannot climb ladders, scaffolds, ropes, or ramps. (*Id.*)  Plaintiff's issues with bladder control would affect his ability to work an eight-hour day. (*Id.*at PageID.706.)

10

Dr. Walker indicated that Plaintiff would be off-task because of his limitations for more than 30% of the time. (*Id.*) Further, Plaintiff would be absent from work five or more days per month and unable to complete five or more workdays per month, both because of his limitations. (*Id.*)

Plaintiff had appointments with Dr. Walker between October 2016 and April 2018. (ECF No. 11-10, PageID.1063–104.) Plaintiff complained of low-back pain that was chronic, sometimes increasing or radiating. (*Id.* at PageID.1070, 1073, 1076, 1080, 1083, 1087, 1090.) Plaintiff's history included invasive sigmoid colon cancer, chronic low-back pain due to degenerative disc disease, bilateral lower limb radiculopathy down to ankles, chronic right lateral neck pain, stiffness, and right upper limb parestheias. (*Id.* at PageID.1063, 1064, 1067, 1070, 1073, 1076, 1080, 1083, 1087, 1090, 1094, 1098, 1102.) On examination, Plaintiff was alert and oriented. (*Id.* at PageID.1064, 1067, 1071, 1074, 1077, 1080, 1084, 1087, 1091, 1095, 1098, 1102.) He had a nontender abdomen in all quadrants. (*Id.* at PageID.1064, 1068, 1071, 1074, 1077, 1081, 1084, 1088, 1091, 1095, 1099, 1102.) Plaintiff's neck was at his baseline without increased stiffness or rigidity. (*Id.* at PageID.1064, 1067, 1071, 1074, 1077, 1081, 1084, 1087, 1091, 1095, 1099, 1102.) He had appropriate cognition. (*Id.* at PageID.1065, 1068, 1071, 1074, 1077, 1081, 1084, 1088, 1091, 1095, 1099, 1103.) He had no obvious gait issues. (*Id.* at PageID.1064, 1067, 1071, 1074, 1077, 1080, 1084, 1087, 1091, 1095, 1098, 1102.)

Included with Dr. Walker's records was a health risk assessment and records for a claim for short-term disability during 2013–2016. (ECF No. 8, PageID.687–726.) In December 2015, Dr. Walker indicated that Plaintiff was unable to work due to disability

indefinitely since August 20, 2015 (*id.* at PageID.692), and as of June 2016, he should never return to work. (*Id.* at PageID.710.)

### c.      Dr. Almounajed

In August 2016, Plaintiff had a follow up with Dr. Almounajed following a colectomy. (ECF No. 11-9, PageID.828.) Plaintiff denied the following: weakness, fatigue, change in appetite, sleep problems, chest pain, cough, difficulty breathing, abdominal pain, headaches, confusion/disorientation. (*Id.* at PageID.829.) Plaintiff reported excessive flatulence. (*Id.*) Plaintiff's physical exam showed he was well developed, cooperative, and he had a regular heart rate, nontender gastrointestinal system, normal gait, and normal neurological system. (*Id.* at PageID.829–30.) Plaintiff was diagnosed with polyps in October 2016 and October 2017. (*Id.* at PageID.819, 866.)

Plaintiff underwent a colonoscopy in February 2016, with nine polyps found during the procedure. (ECF No. 11-7, PageID.432.) In addition, a colonoscopy in October 2017 showed two ascending colon polyps and a transverse colon polyp. (ECF No. 11-10, PageID.1059.)

### d.      David Doubblestein, P.T.

Mr. Doubblestein reported on Plaintiff's progress in physical therapy. (ECF No. 11-10, PageID.1037–38.) Plaintiff had no change in range of motion, strength, or gait. (*Id.* at PageID.1038.) Plaintiff's pain was 4–7 out of 10. (*Id.*) He had moderate restriction for prolonged sitting for an hour, gait at level ground, and gait on stairs; and he had severe restriction for standing for 30 minutes. (*Id.*) Plaintiff was discharged from physical therapy for minimal progress and non-compliance. (*Id.*)

12

###### e.      Dr. Hasnie

Plaintiff underwent an adult EKG in February 2016, following reported chest pain. (ECF No. 11-7, PageID.470.) It revealed normal global systolic function, left ventricular ejection; there was trace tricuspid regurgitation; no evidence of pulmonary hypertension; and segments of left ventricular myocardium moved normally. (*Id.*) At an earlier cardiac evaluation, Plaintiff had a normal gait, a benign cervical spine, and was alert and oriented. (*Id.* at PageID.476–77.)

Plaintiff two appointments with Dr. Hasnie in October 2016 and 2017. (ECF No. 11-10, PageID.1025, 1029.) Plaintiff walked with a cane. (*Id.* at PageID.1026.) Plaintiff had a normal gait and alert and oriented. (*Id.* at PageID.1027, 1031.) He also had normal muscle strength and tone. (*Id.*) He had good posture and a benign spine. (*Id.*) The impression of Plaintiff was abnormal EKG, essential hypertension, personal history of nicotine dependence, and body mass index of about 23. (*Id.* at PageID.1027.) Further, Plaintiff's earlier impression was precordial pain, essential hypertension, shortness of breath, unspecified leg pain, nicotine dependence, and BMI of about 22. (*Id.* at PageID.1031.)

###### f.      Dr. Mattingly

Plaintiff underwent a sigmoid colectomy in April 2016 (ECF No. 11-7, PageID.488) after a diagnosis of sigmoid cancer. (*Id.* at PageID.506.) The surgical pathology report indicated a negative for malignancy. (*Id.* at PageID.490.)

### g.     Dr. Perez-Curet

In September 2017, Plaintiff reported generalized weakness, decreased appetite, change in bowel habits, weight loss, gait disturbance, insomnia, rash, and muscle weakness. (ECF No. 11-10, PageID.1043, 1047.) Further, he reported low back pain, neck pain, and leg pain. (*Id.* at PageID.1042, 1046.) Physical examination revealed that he was alert and oriented; strength was 5/5 for upper and lower extremities; reflexes were 2/4 for patella, ankle, biceps, and triceps; he had normal gait; and no significant spinal stenosis or disc herniation. (*Id.* at PageID.1048–49.) A reviewed MRI showed degenerative disc disease at the L5-S1 level. (*Id.* at PageID.1049.)

### h.     Hurley Medical Records

In August 2015, Plaintiff was brought to the Hurley Emergency Department following a fall off a roof. (ECF No. 11-7, PageID.364.) At the time, Plaintiff had prior history of chronic neck and back pain. (*Id.*) Plaintiff also complained of slight sensation issues with bilateral thighs, and moving his legs was difficult with pain. (*Id.* at PageID.394.) He stated neck and upper back pain was new, and he had pain in his bilateral hips. (*Id.*) He denied headache, visual change, chest or abdominal pain, numbness, tingling, or loss of sensation. (*Id.*) A physical examination at this time showed that Plaintiff was alert and oriented; no respiratory distress; diffuse abdominal tenderness; diffuse parathoracic and paralumbar tenderness, including midline tenderness; normal reflexes; muscle strength and sensation were normal in the upper and lower extremities. (*Id.* at PageID.365. *See also id.* at PageID.395.) He had normal sensation, and lower extremity motor strength was 4/5, and upper extremity motor strength was 5/5. (*Id.* at PageID.396.)

A chest x-ray showed a normal cardiac silhouette, no pneumothorax, and no pleural effusion; with a conclusion of negative for active infiltrates. (*Id.* at PageID.377–78.) The conclusion of a lumbar spine MRI stated that there was no acute post-traumatic process, and stable degenerative changes, mainly involving L3-L4 level with moderate left neural foraminal narrowing. (*Id.* at PageID.379.) The conclusion of a thoracic spine MRI stated there was no acute thoracic spinal fracture or subluxation. (*Id.* at PageID.380.) Further, it stated degenerative changes were seen at T4-T5 and T5-T6 level. (*Id.*) No cord signal abnormality was seen. (*Id.*) A cervical spinal MRI showed no acute post-traumatic process, and minimal degenerative changes without any central canal narrowing. (*Id.* at PageID.382.) A CT scan of Plaintiff's head showed no depressed skull fractures and no acute process. (*Id.* at PageID.397.) An x-ray of his left hip showed no fracture or dislocation; normal joint space; and no bony destruction. (*Id.* at PageID.419.)

In July 2017, Plaintiff went to Hurley emergency department and reported pain for one week at incision site of his April cancer surgery. (ECF No.11-9, PageID.792.) Post-op was uncomplicated, until he experienced periumbilical pain for about a week, and this pain was rated 8–9/10. (*Id.* at PageID.796.) A CT scan of his abdomen showed no acute process. (*Id.* at PageID.793.) A physical exam at the time showed that Plaintiff was alert and oriented, he had periumbilical tenderness, and his back was not tender to palpation. (*Id.* at PageID.796–97.) Plaintiff was given morphine for pain and discharged in good condition. (*Id.* at Page.797.)

### i.      Other Medical Records

Plaintiff was evaluated by Dr. Kovan in April 2013. (ECF No. 11-8, PageID.603.) Plaintiff complained of some left thigh pain (which was controlled by medication) and recurring back pain. (*Id.*) Physical examination revealed normal strength in the lower left extremities and negative straight-leg raising tests. (*Id.*) Plaintiff had full lumbosacral spine flexibility, but he had discomfort with back extension. (*Id.*) The impression was chronic low-back pain secondary to lumbar spondylosis with left L3-L4 disc herniation and possible left lumbar radiculopathy. (*Id.*)

In May 2013, Plaintiff underwent an L3-4, L4-5, L5-S1 transforaminal epidural steroid injection. (ECF No. 11-8, PageID.653, 655.)

In September 2013, Plaintiff reported to Dr. Palavali of the Great Lakes Spine Center that his low-back pain had not improved, and he wanted to consider surgery. (*Id.* at PageID.604.) Dr. Palavali reviewed medical records that show L5-S1 disc degeneration and dynamic instability at L5-S1. (*Id.*)

Records from Insight Pain Management Center (Dr. Kotob), in October 2013, showed Plaintiff complaining of eight years of low-back pain that is constant, but sometimes frequent or occasional. (ECF No. 11-8, PageID.679.) He also complained of numbness in his legs. (*Id.*) Conservative treatment did not work for him. (*Id.*) His pain was worsened with movement. (*Id.*) Plaintiff stated feeling weakness, tiredness, and experiencing weight loss and difficulty sleeping. (*Id.*) His pain has been 6–10/10 and described as occasional, constant, frequent, cramping, shooting, sharp, stabbing, throbbing, and burning. (*Id.* at PageID.679–80.) He said he experienced muscle pain, and back, neck,

leg and joint pain. (*Id.* at PageID.680.) Physical examination revealed abdomen was soft and nontender, no paraspinous tenderness, no sacroiliac joint tenderness, and good lumbar flexion. (*Id.*) Plaintiff was alert and oriented. (*Id.*) Sensation was intact, and motor strength was at 5/5 for all extremities. (*Id.*) Gait was steady. (*Id.*) Deep tendon reflexes were difficult to elicit in the knees and ankles. (*Id.*) A bilateral straight-leg raise test was negative. (*Id.*)

In an October 2014 lumbar spine MRI, the conclusion was that Plaintiff's central canal was patent at all levels, there was left-sided foraminal and extraforaminal disc protrusion with annular tear component at L3-L4, and this may be impinging on the left L3 nerve root. (ECF No. 11-8, PageID.586.) An August 2015 thoracic spine MRI showed no acute thoracic spine fracture or subluxation, and degenerative changes seen at T4-T5 and T5-T6 level causing mild anterior flattening of the thoracic cord at those levels. (*Id.* at PageID.594.) A CT scan of his abdomen showed trace free fluid in the right hemipelvis which could be related to occult inflammation, and otherwise unremarkable study. (*Id.* at PageID.596. *See also id.* at PageID.599.)

Plaintiff underwent right lumbar facet injection in November 2015. (*Id.* at PageID.444.) He reported at a two-week follow-up appointment that he experienced a 50% reduction in right-sided low-back pain, but he continues to have intermittent sharp pain. (*Id.* at PageID.446.) One month later, Plaintiff's right-side low-back pain increased, and he thought the injection was wearing off. (*Id.* at PageID.448.) Plaintiff then underwent a bilateral lumbar facet injection in January 2016. (*Id.* at PageID.450.) He reported one month later that the injection provided minimal to no symptom relief. (*Id.* at PageID.452.) Plaintiff was referred to a spinal surgeon for evaluation and treatment. (*Id.* at PageID.453.)

Plaintiff underwent an EMG in December 2016. (ECF No. 11-9, PageID.1019.) The findings stated "There is no electro-diagnostic evidence of generalized peripheral neuropathy, lumbar radiculopathy, or nerve entrapment. (*Id.*)

Plaintiff underwent an MRI of his lumbar spine in March 2017. (ECF No. 11-10, PageID.1105–06.) The conclusion of the MRI stated that "Left foraminal disc protrusion at L4-L5 and L3-L4 level. Mild left neural foraminal narrowing seen at L4-L5 level and moderate left neural foraminal narrowing seen at L3-L4 level." (*Id.* at PageID.1106.) Further, "Central canal is patent at all lumbar level." (*Id.*)

Plaintiff underwent an MRI of his head in March 2017 because of headache issues. (*Id.* at PageID.1109–10.) The conclusion of the MRI stated "a small microadenoma associated with the right side of the pituitary gland is present. Mild chronic small vessel ischemic changes identified in the brain. No mass or abnormal enhancement otherwise identified." (*Id.*at PageID.1110.)

Plaintiff underwent an MRI of his thoracic spine in April 2017 because of issues midline and upper back pain. (*Id.* at PageID.1113.) The conclusion of the MRI stated Plaintiff had a "Normal thoracic spine." (*Id.* at PageID.1114.) Also, it was reported Plaintiff had a "Normal cervical spine. No evidence of instability or subluxation." (*Id.* at PageID.1116.)

Plaintiff underwent SI Joint injection in October 2017 (ECF No. 11-9, PageID.863.)

### j.    State Agency Doctor

Plaintiff's application for DIB included a review by state agency doctor Dr. Chiambretti. (ECF No. 11-3, PageID.118–30.) Dr. Chiambretti found Plaintiff's medically

determinable impairments were malignant neoplasm of the colon and degenerative disc disease, and both impairments were severe. (*Id.* at PageID.124.) Plaintiff's symptoms were pain, loss of sensation, malaise, and weakness. (*Id.* at PageID.125.) Dr. Chiambretti determined that the extent of Plaintiff's symptoms was partially consistent with the medical evidence. (*Id.*) Plaintiff was found to have exertional limitations of occasionally lifting/carrying 20 pounds, frequently lifting/carrying 10 pounds, stand or sit for six hours of an eight-hour day, and unlimited push/pull controls. (*Id.* at PageID.126.) He had postural limitations occasionally climbing stairs and ladders, balancing, stooping, kneeling, crouching, and crawling. (*Id.*) He had no manipulative limitations. (*Id.*) His environmental limitation was to avoid concentrated exposure to hazards (machinery, heights, etc.). (*Id.* at PageID.127.) Plaintiff is limited to light unskilled work. (*Id.* at PageID.128–29.) Plaintiff was found to be not disabled. (*Id.* at PageID.129.)

### 2.    Application Reports and Administrative Hearings

#### a.    Function Report

Plaintiff completed a function report on June 3, 2016 for his application for DIB. (ECF No. 11-6, PageID.302.) Currently, he lives alone. (*Id.* at PageID.295.) Plaintiff reported that his ability to work was limited by his condition. (*Id.*) He stated he was in "constant pain daily, on heavy pain medicine with some side effects. Unable to prolong sitting, standing, bending, stooping, twisting, and walking." (*Id.*)

Plaintiff's daily activities included making coffee and breakfast, getting dressed, watching television, napping, making dinner, and going outside. (*Id.* at PageID.296.) He did not take care of any other person or animals. (*Id.*) Before his current condition, he was

able to "work, walk, stand, bend without extreme pain". (*Id.*) His condition affected his sleep because of the pain. (*Id.*) He had no problems with his abilities for personal care, and he did not need reminders for personal care. (*Id.* at PageID.296–97.) Plaintiff could prepare sandwiches, frozen dinners, and food in a slow cooker or deep fryer. (*Id.* at PageID.297.) Plaintiff said his conditions affected his appetite. (*Id.*) Plaintiff's chores included laundry, cleaning, and ironing, but no yardwork. (*Id.*) These activities took Plaintiff two to three hours per month to complete. (*Id.*) Plaintiff did not do yardwork because of prolonged walking, bending, pushing, and pulling. (*Id.* at PageID.298.) Plaintiff went outside every day, usually, and he could go out alone. (*Id.*) Plaintiff could drive or ride in a car. (*Id.*) Plaintiff shopped in stores for food or personal items, and he would do this for one or two hours per month. (*Id.*) He could pay bills, handle a savings account, count change, and use a checkbook; this was unchanged with his condition. (*Id.* at PageID.298–99.) Plaintiff's hobbies included watching television and reading; which he did daily. (*Id.* at PageID.299.) With his conditions, Plaintiff had to move often to be comfortable. (*Id.*) Plaintiff spent time with others by talking on the phone, three or four days per week. (*Id.*) He did not have regular places to go, other than church. (*Id.*) Plaintiff needed no reminders to go places. (*Id.*) Plaintiff did not have problems getting along with others, in light of his conditions, he did not go to see his friends or to church because of his pain and effects of medication. (*Id.* at PageID.300.)

Plaintiff said his conditions affected his abilities to lift, squat, bend, stand, reach, walk, sit, and kneel. (*Id.*) Plaintiff could walk for about an hour and then stop and rest for about 10–15 minutes. (*Id.*) He could pay attention for a long time, as long as he was not in

extreme pain. (*Id.*) Plaintiff could finish what he starts, and he could follow written or spoken instructions as long as he is not in extreme pain. (*Id.*)

Plaintiff could get along with authority figures. (*Id.* at PageID.301.) He was never fired for problems working with people. (*Id.*) Plaintiff could handle stress and change in routine as long as he is not in extreme pain. (*Id.*)

Plaintiff used a cane, brace/splint, and glasses. (*Id.*) A doctor prescribed the brace/splint in June 2008. (*Id.*) Plaintiff needed those aids while he worked. (*Id.*)

Plaintiff took medications that have side-effects, including constipation, drowsiness, restlessness, dizziness, headaches, fatigue, and chills. (*Id.* at PageID.302.)

### b.     Plaintiff's Testimony at the Administrative Hearing

Plaintiff testified that he was born on November 29, 1965. (ECF No. 11-2, PageID.81.) He lives in Mount Morris, Michigan, with his two kids, ages 15 and 19. (*Id.*) He has a high school education. (*Id.*) He last worked on August 20, 2015. (*Id.*)

Plaintiff stated he cannot work because of issues with prolonged standing and walking and numbness in his legs, arms, and back. (*Id.* at PageID.82–83.) He further stated that he can stand or walk for 45–60 minutes before he needs to sit down. (*Id.* at PageID.83.) He can sit for 20–30 minutes before he needs to change positions. (*Id.*) He said he could lift and carry about five to ten pounds because he has trouble with numbness in his hands. (*Id.*) Plaintiff stated he has trouble reaching, bending, and crouching. (*Id.* at PageID.84–85.) Plaintiff does very little cooking, cleaning, or other chores, and he relies on his kids for assistance. (*Id.* at PageID.85.) He does not have hobbies. (*Id.*) He has difficulty bathing and dressing. (*Id.*) He does not do yard work. (*Id.*) He can drive. (*Id.* at PageID.86.)

Plaintiff takes medications that have side-effects, including constipation, dizziness, sleepiness and not having an appetite. (*Id.* at PageID.86, 92.) He has not been hospitalized for his condition since he stopped working. (*Id.* at PageID.87.) But he said he was in the emergency room for a colon condition in April 2016, and for a situation where he fell off a roof at work. (*Id.* at PageID.87–88.)

Plaintiff has not been treated by a counselor or psychologist. (*Id.* at PageID.89.) He has received injections for his back from Dr. Adams, and those have been helpful in the short-term. (*Id.* at PageID.89–90.) Plaintiff has received a recommendation to have back surgery, but he is receiving a series of injections before that occurs. (*Id.* at PageID.90.) Plaintiff elected not to do the surgery because the procedure described would make him "totally useless" and he would need "24-hour help." (*Id.* at PageID.99–100.)

Plaintiff stated his ability to drive has changed, including difficulty looking backward and getting into and out of the vehicle. (*Id.* at PageID.91–92.)

Plaintiff's back pain is located in his lumbar spine and his neck. (*Id.* at PageID.92–93.) His back-pain travels down both legs, and he experiences a "numbing shooting pain". (*Id.* at PageID.93–94.) His back-pain level is about a 7 or 8 out of 10, and the pain in his legs are about a 5 or 6 out of 10. (*Id.*) His neck pain is a 7 or 8 out of 10. (*Id.*) The back pain gets worse with activity. (*Id.* at PageID.93.) Plaintiff is experiencing high blood pressure because of the pain. (*Id.* at PageID.95.) Plaintiff uses the bathroom five times per day, which could take 3–25 minutes each time. (*Id.* at PageID.95–96.)

Plaintiff does not do outside work because his brother-in-law assists with that work. (*Id.* at PageID.96.) For indoor work, Plaintiff is able to work 15 minutes, and then he will take a 10-minute break and sit down. (*Id.*)

Plaintiff receives assistance with paying bills from his mother and sister. (*Id.* at PageID.97.) He has a computer, but he does not use it. (*Id.*) He reads a newspaper, but he has difficulty following what he reads because of his medication. (*Id.*) Plaintiff experiences burning and/or numbness with prolonged sitting or standing. (*Id.* at PageID.97–98.) Plaintiff lies down three or four times per day, for 30–45 minutes at a time, as this is his most comfortable position relative to pain. (*Id.* at PageID.98.) Plaintiff sleeps for five or six hours, but he awakes because of pain or bathroom use. (*Id.* at PageID.98–99.)

Plaintiff had physical therapy in 2018 for about three to four weeks, and he was dismissed. (*Id.* at PageID.101.) Plaintiff stated that the reason for the dismissal was that the physical therapist indicated was the therapy was for a particular purpose, and because there was no progress with their approach. (*Id.* at PageID.102.)

### c.    The Vocational Expert's ("VE") Testimony at the Administrative Hearing

The VE identified Plaintiff's past relevant work as CNC machinist, mail truck driver, and press operator. (*Id.* at PageID.103. (citing ECF No. 11-6, PageID.337.)) The ALJ inquired of the VE, of a hypothetical of a person of Plaintiff's age and education, and

> who cannot perform more than light work, as that term is defined in the Social Security Regulations and in the <u>Dictionary of Occupational Titles</u>. The person should be able to alternate from sitting to standing, and from standing to sitting for up to five minutes approximately, every 30 minutes, provided that does not result in being off task more than 10% of the work period. The person should not have to climb ladders, ropes or scaffolds, and can only

occasionally climb stairs, balance, stoop, kneel, crouch or crawl. Assume a limitation to frequent handling, fingering, feeling and reaching. The person should not work around hazards, such as unprotected elevations or dangerous moving machinery. There should be no exposure to vibration. The person should not need to use foot or weight controls, or drive as a work duty.

(*Id.* at PageID.104.) This hypothetical person could not do Plaintiff's past relevant work[1].

(*Id.* at PageID.105.) The VE identified the following jobs available in the national economy that fit within the hypothetical: office worker—light, unskilled, SVP 2, 239.567-010; cashier and retail worker—light, unskilled, SVP 2, 211.462-010; and price marker—light, unskilled, SVP 2, 209.587-034. (*Id.* at PageID.105–06.)

The ALJ inquired about the same hypothetical, only with sedentary work. (*Id.* at PageID.106.) The following jobs were identified for this hypothetical: office clerk—sedentary, unskilled, SVP 2, 249.587-018; video monitor—sedentary, unskilled, SVP 2, 379.367-010; and bench inspector—sedentary, unskilled, SVP 2, 726.684-110. (*Id.*)

The ALJ inquired, do these jobs allow a stand/sit option provided the person is not off-task for more than 10% of the work period. (*Id.*) The VE responded yes, as to the jobs at the light- and sedentary-exertion levels. (*Id.*) Further, these jobs are considered simple, routine jobs. (*Id.* at PageID.107.) These jobs have the expectation that they will be done for eight hours per day and five days per week. (*Id.*)

The VE identified that his testimony is consistent with the *DOT*, other than the issued that were identified above. (*Id.* at PageID.107–08.)

---

[1] The VE identified that certain factors—among them the sit/stand option, being on/off task, and no-driving—are based on the VE's 32 years as a vocational professional and not the *DOT*. (*See* ECF No.11-2, PageID.105.)

### F.      Governing Law

The ALJ must "consider all evidence" in the record when making a disability decision. 42 U.S.C. § 423(d)(5)(B). The regulations carve the evidence into categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1513 (amended March 27, 2017), 416.913 (amended March 27, 2017). "Acceptable medical sources" include, among others, licensed physicians and licensed or certified psychologists. *Id.* §§ 404.1513(a), 416.913(a). "Other sources" include medical sources who are not "acceptable" and almost any other individual able to provide relevant evidence. *Id.* §§ 404.1513(d), 416.913(d). Only "acceptable medical sources" can establish the existence of an impairment. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). Both acceptable and non-acceptable sources provide evidence to the Commissioner, often in the form of opinions "about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* When acceptable medical sources issue such opinions, the regulations deem the statements to be "medical opinions" subject to a multi-factor test that weighs their value. 20 C.F.R. §§ 404.1527 (eff. Sept. 3, 2013 to Mar. 26, 2017), 416.927 (eff. Aug. 24, 2012 to Mar. 26, 2017). Excluded from the definition of "medical opinions" are various decisions reserved to the Commissioner, such as whether the claimant meets the statutory definition of disability and how to measure his or her RFC. *Id.* §§ 404.1527(d), 416.927(d).

The ALJ must use a six-factor balancing test to determine the probative value of medical opinions from acceptable sources. *Id.* §§ 404.1527(c) (eff. Sept. 3, 2013 to Mar.

26, 2017), 416.927(c) (eff. Aug. 24, 2012 to Mar. 26, 2017). The test looks at whether the source examined the claimant, "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c). ALJs must also apply those factors to "other source" opinions. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540–42 (6th Cir. 2007); SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).

Because Plaintiff filed his claim before March 27, 2017, he is entitled to the benefit of the treating-source rule. Under that rule, certain opinions of a treating physician receive controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Wilson*, 378 F.3d at 544. The only opinions entitled to dispositive effect deal with the nature and severity of the claimant's impairments. 20 C.F.R. §§ 404.1527(d), 416.927(c)(2). Therefore, the ALJ does not owe a treating opinion deference on matters reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d).

The regulations mandate that the ALJ provide "good reasons" for the weight assigned to a treating source's opinion in the written determination. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Dakroub v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits must give specific reasons, supported by record evidence, for the weight granted to a treating source's opinion. *Rogers*,

486 F.3d at 242. For example, an ALJ may properly reject a treating source opinion if it lacks supporting objective evidence. *Revels v. Sec'y of Health & Human Servs.*, 882 F. Supp. 637, 640–41 (E.D. Mich. 1994), *aff'd*, 51 F.3d 273 (Table), 1995 WL 138930, at *1 (6th Cir. 1995).

The claimant must provide evidence establishing his or her RFC. The statute lays the groundwork for this, stating, "An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the most he [or she] can still do despite his [or her] limitations," and is measured using "all the relevant evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2).

According to SSR 16-3p, an ALJ must analyze the consistency of the claimant's statements with the other record evidence, considering his or her testimony about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in the Social Security Ruling. SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). This analysis and the conclusions drawn from it—formerly termed a credibility determination—can be disturbed only for a "compelling reason." *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 981 (6th Cir. 2011); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

The Social Security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529(a) (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016). The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ

then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529 (2016); SSR 16-3p, 2016 WL 1119029, at *2 (March 16, 2016); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994). The ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 16-3p, 2016 WL 1119029, at *6 (March 16, 2016).

While "objective evidence of the pain itself" is not required, *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (quoting *Green v. Schweiker*, 749 F.2d 1066, 1071) (3d Cir. 1984)) (internal quotation marks omitted), a claimant's description of his or her physical or mental impairments will "not alone establish that [he or she is] disabled." 20 C.F.R. § 404.1529(a). The absence of objective, confirming evidence obligates the ALJ to consider the following factors:

(i)     [D]aily activities;
(ii)    The location, duration, frequency, and intensity of . . . pain;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;
(v)     Treatment, other than medication, . . . received for relief of . . . pain;
(vi)    Any measure . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3), 416.929(c)(3) (2016); *see also Felisky v. Bowen*, 35 F.3d 1027, 1039–40 (6th Cir. 1994); SSR 16-3p, 2016 WL 1119029, at *7 (March 16, 2016).

### G.     Arguments and Analysis

Plaintiff argues that the ALJ did not properly follow the treating-source rule, by failing to give controlling weight to Dr. Walker's treating physician opinion and failing to

28

give good reasons for the little weight given to her opinion. (Pl. Br., ECF No. 13, PageID.1150.) Further, Plaintiff argues the remainder of the ALJ's analysis is not supported by substantial evidence. (*Id.*) As to both matters, Plaintiff is incorrect.

In disability cases, medical opinions are "always consider[ed]" "together with the rest of the relevant evidence". 20 C.F.R. § 404.1527(b). The ALJ considered the opinions of Drs. Walker, Adams, and Chiambretti. (ECF No. 11-2, PageID.67–68.) She gave little weight to the opinions of Walker and Adams, and significant weight to the opinion of Chiambretti. (*Id.* at PageID.68.) Regarding Dr. Walker's opinions, the ALJ stated "they are not supported by the clinical findings and diagnostic test results documented in treatment notes. Moreover, some are temporary, some are nonspecific, and some of the opinion evidence is conflicting." (*Id.*) In addition, Dr. Walker's opinion that Plaintiff cannot return to work because he is disabled is an opinion on a matter reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d). Next, Dr. Adams opinions of no work-restrictions were given little weight because "the record supports restrictions consistent with the above residual functional capacity finding." (ECF No. 11-2, PageID.68.) Finally, Dr. Chiambretti's opinion was give significant weight because "it remains generally consistent with the evidence at the hearing level." (*Id.*)

Plaintiff's argument that the ALJ failed to provide good reasons in not providing controlling weight considers the following assertions: 1) there is "plenty of supporting evidence to give great weight to Dr. Walker's opinion", (Pl. Br., ECF No. 13, PageID.1152.); 2) the ALJ "could have contacted the specialist in physical medicine" and inquired of the nature of Plaintiff's lack of restriction, but, in fact, the ALJ failed to do so,

(*id.*); 3) the state agency doctor did not consider all of Plaintiff's medical records, nor did the doctor physically examine Plaintiff, (*id.* at PageID.1153). Plaintiff also argues the ALJ's decision is not supported by substantial evidence because the ALJ failed to comply with SSR 16-3p in her evaluation of Plaintiff's symptoms of his medically determinable impairments. (*Id.* at PageID.1154).

Plaintiff claims, without directly citing evidence, that there are "plenty of supporting evidence to give great weight to Dr. Walker's opinion." (*Id.* at PageID.1152.) One could say that Plaintiff abandoned this particular argument, as "[Plaintiff] cannot leave it to the Court to scour the record for evidence supporting his claims." *Sabbota v. Comm'r of Soc. Sec.*, 2018 WL 3626150 at *3 (E.D. Mich. 2018) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)), *rep. and rec. adopted* 2018 WL 3626150 (E.D. Mich. 2018). In any event, "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Turning to the reasons the ALJ gave for the given weight for Dr. Walker's opinion, the ALJ must consider various factors before assigning a weight, but "[t]he ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion." *Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). However, "[The] reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"
*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing SSR 96-2p).
Here, the ALJ identified that Dr. Walker's opinions were not supportable by the medical
record. (ECF No. 11-2, PageID.68.) And again, an ALJ may reject a treating source opinion
if it lacks supporting objective evidence. *Revels*, 882 F. Supp. at 640–41. An ALJ's
assessment of a medical opinion must be read together with the whole decision of the ALJ.
*Vitale v. Comm'r of Soc. Sec.*, 2017 WL 4296608 at *2 (E.D. Mich. 2017) (citing *Athey v.
Comm'r of Soc. Sec.*, 2014 WL 4537317 at *4 (E.D. Mich. 2014)). Here, a review of Dr.
Walker's treatment records throughout the medical record do not reveal consistency with
the limiting extent of her medical opinion. Further, Dr. Walker cited in her opinion a
clinical finding of lower limb radiculopathy, (ECF No. 11-8, PageID.703), but an EMG
showed no signs of radiculopathy (ECF No. 11-9, PageID.1019). Accordingly, in the
absence of supporting clinical or diagnostic findings, the ALJ assigned the correct weight
to Dr. Walker's opinion.

Next, Dr. Adams consistently stated in a number of medical records that there was
no recommended work or activity limitations, as cited by the ALJ. Plaintiff claims that the
ALJ could have contacted Dr. Adams to "inquire as to why so many of his office notes
state 'no restrictions'" (Pl. Br., ECF No. 13,  PageID.1152.) To bolster Plaintiff's position
on Dr. Adams, Plaintiff cites a January 25, 2019 letter from Dr. Adams with Adam's more
recent medical opinion. (*Id.*, citing ECF No. 11-2, PageID.42.) However, here, the
Commissioner correctly asserts the ALJ's ability to resolve incomplete evidence includes
the discretionary action to "recontact your medical source"; this is not mandatory. 20

31

C.F.R. § 4040.1520b(b)(2)(i) This regulation is a means to resolve "incomplete or inconsistent" evidence, and Plaintiff has not shown that the record evidence was incomplete. Particularly, Dr. Adams January 2019 letter is not relevant to the merits of the instant judicial review, as it was submitted to the Appeals Council and the Council found the "evidence does not show a reasonable probability that it would change the outcome of the decision." (ECF No. 11-2, PageID.35.) The evidence is available for consideration under a Sentence Six remand, "if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding." *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996) (citing *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993)). Here, Plaintiff does not present good cause for failing to present this record. Plaintiff's assertion that the ALJ could have got this information from Dr. Adams is contrary to Plaintiff's burden of proving his disability in the first four steps of the sequential analysis. *See*, *e.g.*, 20 C.F.R. § 404.1512(a); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("[W]e note that the burden of proof lies with the claimant at steps one through four of the process[.]").

Next, Plaintiff claims the ALJ erroneously relied on the opinion of state agency doctor Thomas Chiambretti because his opinion relied on partial medical record of the case. (Pl. Br., ECF No. 13, PageID.1153.) "Generally, an ALJ is permitted to rely on state agency physician's opinions to the same extent as she may rely on opinions from other sources." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 274 (6th Cir. 2015) (citing 20 C.F.R. § 404.1527). Here, Plaintiff's argument appears to be in error or incomplete. Plaintiff cites the alleged record of medical evidence reviewed by Dr. Chiambretti (Pl. Br., ECF No. 13,

PageID.1153), but that listing appears to differ from Dr. Chiambretti's record of reviewed evidence. (*See* ECF No. 11-3, PageID.119.) Further, Plaintiff does not articulate what part of the later-dated record is inconsistent with Dr. Chiambretti's opinion. It is also notable that Dr. Walker's opinion, which previously Plaintiff asserted greater weight, was prepared in April 2016 (ECF No. 11-8, PageID.706) while Dr. Chiambretti's opinion was prepared in November 2016 (ECF No. 11-3, PageID.129); Plaintiff does not explain this date discrepancy, relative to the whole record.

As to the final component of Plaintiff's argument, Plaintiff argues the ALJ did not comply with SSR 16-3p by focusing on Plaintiff's credibility rather than his symptoms. Plaintiff appears to suggest that the following finding of the ALJ was conclusory and contrary to SSR 16-3p:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in this decision.*

(ECF No. 11-2, PageID.68) (emphasis added). Finally, Plaintiff proceeds to analyze the seven factors of other evidence listed in 20 C.F.R. § 404.1529 and asserts that Plaintiff's likely absences and off-task time would be work preclusive. Plaintiff's argument and analysis are incorrect.

Plaintiff's recitation of his circumstances to analyze within the factors of SSR 16-3p or 20 C.F.R. § 404.1529 are not conclusive and do not undermine the ALJ's finding, which was supported by substantial evidence. Statements about Plaintiff's pain alone will not

establish that he is disabled. 20 C.F.R. § 404.1529(a). And again, mere substantial evidence of an alternative conclusion in the record is not sufficient to reverse an ALJ's decision. *Buxton*, 246 F.3d at 772. Further, the Court does not decide questions of credibility. *Cutlip*, 25 F.3d at 286. Nor does it appear that the ALJ engaged in credibility analysis other than subjective symptom evaluation per SSR 16-3p. Finally, it is not error for the ALJ to not explicitly discuss the seven factors in 404.1529(c)(3). *Adams v. Comm'r of Soc. Sec.*, 2012 WL 6931495, at *12 (E.D. Mich. 2012), *rep. and rec. adopted*, 2013 WL 300907 (E.D. Mich. 2013).

In any event, the ALJ considered Plaintiff's statements and the medical record, and crafted an RFC with postural and environmental limitations, and limitations related to driving and foot/leg controls, based on the whole medical record. The ALJ is only required to include limitations within the RFC that are found to be credible. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Contrary to Plaintiff's claim, (Pl. Br., ECF No. 13, PageID.1159), it is not the ALJ's burden to show Plaintiff possesses a residual functional capacity to work; if a greater RFC limitation is necessary, it is Plaintiff's burden to provide evidence for it. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

## H.    Conclusion

For these reasons, I would conclude that substantial evidence supports the Commissioner's denial of benefits, and I recommend **DENYING** Plaintiff's Motion, (ECF No. 13), **GRANTING** the Commissioner's Motion, (ECF No. 17), and **AFFIRMING** the Commissioner's final decision denying benefits.

III.   <u>**REVIEW**</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 22, 2020

<span style="text-align:right">S/ PATRICIA T. MORRIS</span>
Patricia T. Morris
United States Magistrate Judge